UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KENNETH WRIGHT,

                                        Plaintiff,

                                                                DECISION AND ORDER

                                                                04-CV-6332L

                        v.

EASTMAN KODAK COMPANY,

                                        Defendant.

_____

GARY THOMPSON,

                                        Plaintiff,

                        v.                                      04-CV-6333L

EASTMAN KODAK COMPANY,

                                        Defendant.

_____

Plaintiffs Kenneth Wright ("Wright") and Gary Thompson ("Thompson"), two former employees of defendant Eastman Kodak Company ("Kodak"), bring these actions against Kodak alleging discrimination in employment on the basis of race, pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and the New York Human Rights Law, N.Y. Exec. Law §§290 et seq. ("NYHRL").

Several of Wright's and Thompson's claims have already been dismissed, and Kodak now moves to dismiss all of their remaining claims. For the reasons that follow, Kodak's motions for summary judgment (Dkt. #32)[1] are granted, and the complaints are dismissed.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

### A.   Kenneth Wright

Wright began working for Kodak in 1982, and has occupied several positions in a number of buildings throughout Kodak Park.

Between 1999 and 2001, Kodak implemented an Alternative Dispute Resolution ("ADR") Peer Review Process, which it had developed in conjunction with the National Association for the Advancement of Colored People (" NAACP") in order to process certain discrimination claims of

---

[1] Docket numbers for all documents cited herein are the same for both the Wright and Thompson cases.

[2] Plaintiffs and defendant are represented by the same counsel in each case, and the pending motions for summary judgment have been briefed together. While I note that there are factual issues and claims unique to each case, there are nonetheless significant common questions of law and fact. Accordingly, I consolidate them for purposes of deciding the pending motions. FED. R. CIV. P. 42.

employees.  Pursuant to the ADA Peer Review Process, an employee complaining of discrimination in the workplace could submit a complaint to the NAACP, which would forward it to Kodak.  The employee would then be assigned a "coach," a person from outside of Kodak, to assist them in preparing and submitting their complaint to an ADR panel made up of three or four Kodak employees.  The ADR panel would make findings and a recommendation to the "Corporate Sponsors," Kodak officers charged with the duty to resolve the claim and decide whether to offer the complainant a settlement from Kodak.  The complainant could negotiate with the Corporate Sponsors over the offer, but if he accepted it, would be required to sign a release of his claims against Kodak.

In 1999, Kodak asked Wright to serve as an ADR panelist, which Wright did for approximately two years.  As a result of serving on the panel, Wright's prior salary of $704 per week at wage grade 11 was increased, ultimately to $837 at a wage grade of 13.

Following Wright's tenure on the ADR panel, Kodak encouraged him to apply for a promotion to a supervisory position in the Building Maintenance Department.  Wright interviewed for the position, and was selected and hired.  He was initially offered an annual salary of $35,000, but successfully negotiated an increase to $49,082.

Shortly after Wright assumed the Building Maintenance supervisor position, his subordinates began complaining about his conduct.  Kodak's Human Resources Department investigated the complaints by performing what Kodak refers to as an "environmental scan," and found that a significant percentage of Wright's subordinates felt that he did not respect them, and reported that Wright verbally harassed, criticized, belittled and humiliated them on a regular basis.

Following the environmental scan, Kodak decided to reassign Wright to a different supervisory position in the Building Maintenance Department, supervising a new group of employees. Wright commenced the new position in January 2002. In 2004, Wright was terminated by Kodak during a company-wide reduction in force.

By Decision and Order dated August 22, 2006, this Court dismissed all of Wright's claims arising before October 26, 1999 (Dkt. #26), on the grounds that they were barred by an ADR Release executed by Wright in Kodak's favor. Wright's remaining claims are: (1) discrimination in compensation; (2) discriminatory denial of promotions; (3) hostile work environment; and (4) retaliatory discharge, all during the time period from October 26, 1999 to his termination in 2004.

**B.     Gary Thompson**

Thompson began working for Kodak in 1990 as a glass operator, and thereafter worked in a variety of positions at Kodak Park. In 1999, Thompson was recruited from a packaging and shipping position in Building 30 to become an ADR Peer Review panelist, and did so from November 1999 through September 2001. Following his tenure as a panelist, Thompson returned to Building 30 as a chiller operator. He occupied that position for one month, after which he was transferred, at his request, to a team leader position in the Rochester Adjustment Services ("RAS") logistics organization in Building 605.

While working in Building 605, Thompson was in the process of completing a degree in business administration from RIT, an endeavor which was funded almost completely by Kodak, which also varied his work schedule so that he could attend classes. Because the program required Thompson to fulfill a cooperative requirement, Thompson requested, and was granted, temporary

reassignment in February 2003 to a marketing internship in Kodak's Health Group.  Upon completion of the cooperative requirement, Thompson returned to his position with RAS, which was undergoing a reduction in force.  Thompson was considered, but not selected, for termination,  but was instead reassigned to a short-term position.

In May 2004, Thompson applied for a new position as a Kodak Service Network ("KSN") specialist in the Health Group.  Although the position was intended for a candidate with appreciable knowledge and experience with Health Imaging equipment, customer relations and business management, Kodak awarded  the position to Thompson, who had "the minimum skills" required for the position, albeit at a wage grade of 41 instead of the originally-intended wage grade of 43.

Thompson accepted the position at wage grade 41, which resulted in an increase in his annual compensation from $39,156 to $51,657.  It was his understanding that if he remained in the position for six months, a reassessment would be performed as to whether his wage grade should be increased to grade 43.

Thompson was the only KSN Specialist at the time, and was required to make sales calls nationwide to sell KSN service contracts.  Thompson was unable to sell more than one or two, and informed his supervisor that the KSN program would not succeed.  Shortly thereafter, Kodak canceled the program and placed Thompson in a clerical position within Health Imaging, with no change in compensation.

In early 2005, Thompson left Kodak, on the advice of his doctors, on short-term disability leave.  In June 2005, Thompson returned.  He was placed in a new marketing position in the Health Group, but shortly thereafter left again on a second short-term disability leave.  He returned in

December 2005, but took a third disability leave in April 2006, from which he has not returned. Kodak continued to pay him through April 30, 2007, when Kodak sold its health care operations to CareStream. Thompson is now a CareStream employee, and although he remains on leave, has continued to be paid by CareStream.

On August 22, 2006, this Court dismissed all of Thompson's claims arising prior to December 3, 1999, because they were barred by an ADR Release executed by Thompson in Kodak's favor (Dkt. #26). Thompson's remaining claims are: (1) discrimination in compensation; (2) discriminatory and/or retaliatory denial of promotions; (3) hostile work environment; and (4) retaliation, all during the time period from December 3, 1999 to the present.

In or about 2002, Wright and Thompson filed administrative charges of race-based discrimination and retaliation against Kodak with the EEOC. They received a Right to Sue letter on April 30, 2004, and the instant actions were timely commenced on July 19, 2004.

## DISCUSSION

### I. Summary Judgment in Discrimination Cases

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Although courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, a common component of discrimination actions, *see Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988); *Montana v. First Federal Savings and Loan Ass'n of*

*Rochester*, 869 F.2d 100, 103 (2d Cir. 1989), "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to... other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985) (summary judgment rule would be rendered sterile if mere incantation of intent or state of mind would act as a talisman to defeat an otherwise valid motion). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000), *quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993) (trial courts should not "treat discrimination differently from other ultimate questions of fact").

The plaintiffs' claims of employment discrimination pursuant to Section 1981, Title VII and the NYHRL are subject to the burden-shifting analysis articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, each plaintiff must establish a *prima facie* case of discrimination by demonstrating: (1) membership in a protected class; (2) satisfactory job performance; and (3) an adverse employment action, occurring under (4) circumstances giving rise to an inference of discrimination. *See Collins v. New York City Transit Authority*, 305 F.3d 113, 118 (2d Cir. 2002). Once each plaintiff has established a prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000). The burden then returns to the plaintiffs, to supply evidence that the legitimate, nondiscriminatory reasons offered by the defendant are a pretext. *See St. Mary's Honor Center*, 509 U.S. 502, 508 (1993).

While granting both plaintiffs the liberal interpretation and favorable inferences due to them as nonmovants, I find that neither Wright nor Thomas has established a *prima facie* case of discrimination.

II.     **Plaintiffs' Discrimination and Retaliation Claims**

    A.      **Discrimination in Compensation**

To establish a *prima facie* case that he was disparately paid, a plaintiff must show: (1) membership in a protected class; (2) that he was paid less than similarly situated non-members of the protected class; and (3) evidence of discriminatory animus. *See Stoddard v. Eastman Kodak Co.*, 2007 U.S. Dist. LEXIS 22984 at *18 (W.D.N.Y. 2007).

Despite substantial discovery, Wright concedes that he is unable to identify a single similarly-situated, non-African-American Kodak employee who was paid more than he. As such, Wright's claim of disparate treatment with respect to compensation must be dismissed.

Thompson contends that when he was working as a group leader within the Logistics organization, he was paid the same as a Caucasian group leader over whom Thompson had just less than a year of seniority. Second, after Thompson joined Health Imaging in May 2004, he came to believe from "hearsay" conversations with unidentified co-workers that some employees on his "team" were making more than he. Third, Thompson believes he should have been paid at a higher rate than a particular employee Kodak hired from the Simon School at the University of Rochester, although Thompson admits he has no idea what that employee's position entailed, how his performance was rated, or what factors Kodak would have used to determine his compensation level. In short, Thompson fails to identify or provide evidence concerning any comparators that would support his claims of discriminatory compensation disparities. *See generally Stoddard*, 2007 U.S. Dist. LEXIS 22984. Those claims must accordingly be dismissed.

### B.      Discriminatory Denial of Promotions

To successfully establish a *prima facie* case of discriminatory failure to promote, plaintiff must prove that: (1) he is a member of a protected class; (2) he applied for and was qualified for the job; (3) he was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having plaintiff's qualifications. *See McDonnell Douglas Corp.*, 411 U.S. 792; *Petrosino v. Bell Atlantic*, 385 F.3d 210, 226 (2d Cir. 2004). Once a *prima facie* case has been established, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason why the plaintiff was not promoted. If a legitimate, nondiscriminatory reason is established, the burden returns to plaintiff, to demonstrate that the reason put forth by the employer is pretextual. *See Mauro v. Southern New England Telecommunications, Inc.*, 208 F.3d 384, 387-388 (2d Cir. 2000). At minimum, plaintiff must identify the specific position or positions which are at issue. *Petrosino*, 385 F.3d 210 at 227.

Here, Wright has failed, in interrogatory responses, deposition testimony, or in response to the instant motion, to identify any position or promotion which he sought and was denied. Indeed, Wright testified that the only promotion for which he applied during the relevant time period was the Building Maintenance Department supervisor position, for which he was selected and hired. Accordingly, Wright's discriminatory failure to promote claim must be dismissed.[3]

### C.      Hostile Work Environment

In order to prevail on a claim that unlawful harassment has caused a hostile work environment in violation of Title VII, a plaintiff must demonstrate that the workplace was permeated

---

[3] Thompson's claims relating to promotions are also styled as retaliation claims, and accordingly are addressed in subsection D, *infra*.

with "discriminatory intimidation, ridicule, and insult... sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and show a specific basis for imputing the conduct that created the hostile work environment to the employer. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). *See also Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003); *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002); *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997). In determining whether conduct constitutes a hostile work environment, the Court must consider the frequency and severity of the discriminatory conduct, whether the conduct is physically threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's work performance. *See Winnie v. City of Buffalo*, 2003 U.S. Dist. LEXIS 1497 at *14-*15 (W.D.N.Y. 2003), *citing Harris*, 510 U.S. at 23.

Nonetheless, "Title VII is not a 'general civility code.'" *Bickerstaff v. Vassar College*, 196 F.3d 435, 452 (2d Cir. 1999), *citing Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). Although offensive language need not be directed toward a plaintiff in order to contribute to a hostile work environment, *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997), a few isolated incidents of "boorish or offensive use of language," particularly when heard "second-hand," are generally insufficient to establish a hostile work environment. *Benette v. Cinemark U.S.A., Inc.*, 2003 U.S. Dist. LEXIS 22636 at *18 (W.D.N.Y. 2003). See also *Clark County School District v. Breeden*, 532 U.S. 268, 270 (2001) (conduct must be severely threatening or humiliating to rise to the level of a hostile work environment); *Kotcher v. Rosa & Sullivan Appliance Ctr.*, 957 F.2d 59,

62 (2d Cir. 1992) ("incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief").

In support of his hostile work environment claim, Wright alleges that: (1) in 1983, while working in a darkroom with a colleague, the colleague attempted to place a flashlight near or between Wright's buttocks when he was bent over; (2) in 1989 or 1990, a fellow employee referred to Wright as a "boy"; (3) in 1992, a fellow employee referred to Wright using a racial slur; (4) in 1992, Wright's then-supervisor told Wright that he would have "[Wright's] ass thrown out of [Kodak]"; and (5) in 1996, someone left a note in Wright's mailbox which referenced Dr. Jack Kevorkian, a controversial physician noted for his support of assisted suicide for terminal patients.

Thompson's sole allegation in support of his hostile work environment claim is that once in 1991 – thirteen years before the instant action was commenced – a coworker referred to him using a racial slur.

As an initial matter, the conduct of which the plaintiffs complain is barred by their ADR Releases of all claims: for Wright, claims arising before October 26, 1999, and for Thompson, claims arising before December 3, 1999. Furthermore, even in the absence of the ADR Releases, plaintiffs' claims are untimely under the applicable statutes of limitation: 300 days under Title VII, three-years under the NYSHRL, and four years under Section 1981. *See* 42 U.S.C. §2000e-5(e); N.Y. CPLR §214(2); 28 U.S.C. §1658. Moreover, even if they had been timely asserted, I find that plaintiffs' allegations describe only isolated incidents which are not sufficiently threatening, humiliating or pervasive to give rise to a hostile work environment. *See generally Benett*, 2003 U.S. Dist. LEXIS 22636 at *18. As such, the plaintiffs' hostile work environment claims must be dismissed.

### D.       Retaliation

Retaliation claims, too, are analyzed using the familiar *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas*, 411 U.S. at 792.  On a motion for summary judgment, the plaintiff must first establish a *prima facie* case of retaliation by showing (1) his participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action.  If he does so, the burden shifts to the defendant to establish a legitimate, non-retaliatory basis for the complained-of action. If the defendant does so, the burden returns to plaintiff, who must show that the legitimate, non-retaliatory reason articulated by the defendant is a mere "pretext," and that retaliation was more likely than not the reason for the complained-of action.  *See Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000); *Gallagher v. Delaney*, 139 F.3d 338, 349 (2d Cir. 1998).

Wright's only allegation of retaliatory employment action refers to the fact that he was subpoenaed for a deposition by Kodak's counsel.[4]  Manifestly, an employer's defense against a discrimination complaint does not become an "employment action" simply by virtue of the fact that

---

[4]  In response to this motion, Wright and Thompson have submitted electronically-signed affidavits (Dkt. #38, Exh. K) that purport to allege additional acts of discrimination and/or retaliation by Kodak.  Although Kodak objects to the affidavits as "unsigned," they do bear electronic signatures consistent with the rules in this district, to which Kodak did not timely object.  *See generally* W.D.N.Y. Administrative Procedures Guide §2(g)(i) (W.D.N.Y. December 1, 2007) (where attorney has obtained signature of non-attorney on original document, the attorney may electronically file the document indicating signatory's name using "s/name" format).  Nonetheless, the affidavits are insufficient to defeat summary judgment.  To the extent that each contains relevant evidence, each substantially contradicts the affiants' prior deposition testimony concerning the grounds for their claims, and "factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996).  *See also Cruz v. Duane Reade Pharmacy Co.*, 2005 U.S. Dist. LEXIS 10186 at *16-*17 (S.D.N.Y. 2005).

customary litigation channels compel the employee-plaintiff to comply with the legitimate discovery demands of the employer's counsel.   Because Wright has neither alleged nor supplied evidence to indicate any adverse action with respect to the terms and conditions of his employment with Kodak, his retaliation claim must be dismissed.

Thompson alleges he believes that Kodak retaliated against him for filing an EEOC charge in March 2002 by terminating his wife, who was also a Kodak employee, through a reduction in force in December 2003.   Thompson admits, however, that this claim is based on, "[n]o facts, [just] speculation," and has offered no evidence concerning the reduction in force, other than its temporal proximity, to suggest that his wife's termination was causally connected with his EEOC charge.   *See Simpson v. New York State Dep't of Civil Servs.*, 166 Fed. Appx. 500, 502 (2d Cir. 2006) **(**without more, temporal proximity is insufficient to satisfy a plaintiff's burden to bring forward some evidence of pretext).

Thompson also alleges that his mid-year and end-of-the-year 2002 performance assessments, despite being overwhelmingly positive, were not as positive as they should have been, in possible retaliation for his service as an ADR panelist, which ended in 2001.   (Thompson admits, however, that his end-of-the-year 2001 assessment, prepared by the same supervisor as the mid-year 2002 assessment, was fair.)   After Thompson complained about some of the comments on the mid-year 2002 assessment, Kodak revised the assessment to remove the disputed comments.

Thompson also alleges that a supervisor retaliated against him by interfering with his efforts to transfer to a different group, although he concedes that the supervisor interfered with efforts by both African-American and Caucasian employees to transfer to other groups, and can only

"speculate" that her interference with his efforts was in some way retaliatory. Thompson also has a "personal belief," unsupported by evidence, that Kodak's human resources department was responsible in some way for his lack of success in obtaining work at other, unrelated companies, including Fuji, Bausch & Lomb, Xerox, Paychex, and GlaxoSmithKline.

Finally, Thompson claims that he was retaliated against when he was not offered a particular position in Kodak's Entertainment Imaging group, which would have raised his annual compensation from $38,000 to $75,000, but testified that he could not adduce any facts to support his "assumption" that the promotion denial was retaliatory, an assumption which is based on his "paranoia" concerning Kodak management. Thompson offers no evidence concerning any other candidates who were interviewed for, or offered, the position.

Thompson's retaliation claims are unsupported by evidence in admissible form.

Thompson repeatedly testified that the only evidence of a causal connection between the allegedly adverse employment actions and his protected activities (participation on the ADR panel and the filing of his EEOC charge) was his own "speculation." Thompson fails to allege or establish facts concerning a causal connection between his protected activities and the adverse employment actions, and most notably provides no evidence concerning the credibility of his performance assessments, the downsizing during which his wife's employment was terminated, the decision-making process for the alleged adverse employment actions, and/or the successful applicants or transferees for the positions he alleges he should have been awarded. *See e.g.*, *Ledbetter v. The Goodyear Tire & Rubber Co., Inc.*, 127 S. Ct. 2162, 2171 (2007); *Collier v. Plumbers Union Local No. 1*, 2007 U.S. Dist. LEXIS 41327 at *10-*11 (E.D.N.Y. 2007)*; During v. City Univ. of New York*,

2005 U.S. Dist. LEXIS 20405 at *14-*15 (S.D.N.Y. 2005).  As such, I find that Thompson has failed to set forth a *prima facie* case of retaliation, and his retaliation claims must be dismissed.

E.      **Plaintiffs' Claims Concerning the Need for Additional Discovery**

        While candidly acknowledging that they have no admissible evidence to support their claims, the plaintiffs nonetheless argue that they should be permitted time to conduct additional discovery, in order to show "that the Defendant utilized the ADR process to conspire and retaliate against [plaintiffs]."  Specifically, plaintiffs seek to depose additional Kodak witnesses, and to discover more information concerning Kodak's ADR process, including certain "employment history data tapes," which were reportedly supplied to the EEOC by Kodak, and would, plaintiffs contend, supply information concerning pay and compensation for other African-American and Caucasian Kodak employees.

        Pursuant to Rule 56(f), district court have a duty to ensure that the parties have been afforded a reasonable opportunity to complete the record before ruling on a motion for summary judgment. *See Strougo v. Bassini*, 1999 U.S. Dist. LEXIS 5951 (S.D.N.Y. 1997).  "This is particularly true in Title VII cases, where the imposition of unnecessary discovery limitations is to be avoided." *Flanagan v. Travelers Ins. Co.*, 111 F.R.D. 42, 46 (W.D.N.Y. 1986).  In assessing the sufficiency of a Rule 56(f) request, the Court must determine whether the supporting affidavit establishes: (1) the nature of the uncompleted discovery; (2) how the facts sought are reasonably expected to create a genuine issue of material fact; (3) what efforts the affiant has made to obtain those facts; and (4) why those efforts were not successful.  *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994).  While a Rule 56(f) discovery request may be granted to allow a plaintiff to "fill

material evidentiary gaps," it may not be premised solely on speculation as to evidence which *might* be discovered: "it does not permit a plaintiff to engage in a 'fishing expedition.'" *Id*. at 1138 (citations omitted); *Cooper v. John D. Brush & Co.*, 242 F. Supp. 2d 261, 266 (W.D.N.Y. 2003).

Plaintiffs' Rule 56(f) affidavit offers scant details concerning the precise discovery sought, or what it may be expected to yield.  Furthermore, with discovery in this matter long since concluded, there is no explanation for why plaintiffs have not sought to obtain the requested discovery in a timely fashion.  While plaintiffs point to delays occasioned by a prior motion to compel certain documents and witnesses (Dkt. #15) which was stayed for a time pending this Court's resolution of Kodak's initial motion to dismiss (Dkt. #19), that motion was denied by Magistrate Judge Feldman, without prejudice to renewal, on September 15, 2006 (Dkt. #28), and during the thirteen months that followed plaintiffs never made any effort whatsoever to renew it, extend the time for discovery, or otherwise obtain the discovery they now request.  The deadline for discovery passed on October 30, 2007.  (Dkt. #30, #31).  Given plaintiffs' failure to identify the "evidentiary gaps" that the requested discovery is meant to address, and because "requests for discovery in the face of motions for summary judgment put forth by parties who were dilatory in pursuing discovery are disfavored," I find that plaintiffs' requests for additional discovery must be denied.  *See Paddington Partners*, 34 F.3d at 1139; *Matya v. United Ref. Co.*, 2006 U.S. Dist. LEXIS 61221 (W.D.N.Y. 2006) .

**CONCLUSION**

For the foregoing reasons, Kodak's motions for summary judgment (Dkt. #32 in each case) are granted, and plaintiff's complaints are dismissed in their entirety, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
April 23, 2008.

- 17 -